

8212 3ʳᵈ Avenue, Brooklyn NY 11209
917.397.1577 Office
718.395.1732 Fax
JIandolo@jiandololaw.com

January 22, 2026

**VIA ECF**
The Honorable Clay H. Kaminsky
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: **United States v. Ernest Aiello**
    Case No. **25-314 (RER)**

Dear Judge Kaminsky:

    Counsel respectfully submits this letter on behalf of Defendant Ernest Aiello requesting a modification of his current bail conditions pursuant to 18 U.S.C. § 3142(c). The undersigned has communicated with Colton Craft from Pretrial Services whom stated that *"Pretrial Services is in agreement with the removal of Mr. Aiello's location monitoring device and curfew. Additionally, Pretrial Services consents to the expansion of his travel restrictions to include New Jersey and New York State."*

    Mr. Aiello is presently released on, *inter alia,* a three-million-dollar bond, GPS monitoring, and a curfew. Since his release, Mr. Aiello has complied fully with every condition imposed by this Court, has remained in constant communication with Pretrial Services, and has consistently advised of his whereabouts. Notwithstanding his exemplary compliance, the current conditions are unduly burdensome and are not the least restrictive means necessary to reasonably assure either community safety or Mr. Aiello's return to Court.

    Mr. Aiello is the father of three young daughters and is deeply rooted in the community. He jointly owns and operates a family business with his wife, Mellissa Aiello, in Staten Island, New York, known as *Uncle Louie G's*. That business has franchise locations in other states which require periodic in-person oversight. In addition, Mr. Aiello operates a small construction company based in New Jersey, where his frequent physical presence is necessary to manage ongoing projects. Further, Mrs. Aiello's immediate family resides in Westchester County, New York, and Mr. Aiello routinely assists with family obligations there.

Compounding these obligations, Mr. Aiello regularly travels from Long Island, New York, to Staten Island each day for work. As the Court is well aware, traffic conditions in and around New York City—particularly involving bridges, tunnels, and interborough travel—are often unpredictable and severe. On many occasions, this commute exceeds two hours through no fault of Mr. Aiello. The existing curfew therefore places him at constant risk of technical violation despite good-faith efforts to comply, rendering the curfew impractical and punitive rather than supervisory in nature.

The GPS monitoring and curfew restrictions materially interfere with Mr. Aiello's ability to maintain his businesses, support his family, and attend to legitimate business responsibilities, despite there being no allegation that he has misused his liberty, attempted to flee, or violated any condition of release.

Equally important, the Government's detention memorandum is unequivocally devoid of any substantive allegation of wrongdoing by Mr. Aiello. Of the approximately forty pages submitted, only two brief paragraphs even reference him, and those references are limited to the conclusory assertion that "AIELLO received criminal proceeds from the charged fraud scheme in his capacity as a leader of the Bonanno family." (Detention Memo at p. 21). There are no factual allegations identifying any overt acts, meetings, transactions, communications, or conduct tying Mr. Aiello to the charged scheme or to any criminal activity whatsoever.

Indeed, the Government affirmatively acknowledges that Mr. Aiello "did not typically visit the gambling location itself." (Detention Memo at p. 9). Thus, even the Government's own submission disclaims any hands-on involvement by Mr. Aiello in the alleged conduct underlying the indictment.

Further underscoring this point, Mr. Aiello specifically requested discovery materials that pertained to him individually. In response, undersigned counsel provided the Government with a five-terabyte external hard drive for that purpose. The drive was subsequently returned with the explanation that "Aiello does not have an individual production." This response confirms that, notwithstanding the Government's broad assertions at the outset of this case, there is no individualized discovery evidencing criminal conduct by Mr. Aiello.

Taken together, the detention submission, the limited discovery produced, and the Government's own acknowledgments demonstrate that the allegations concerning Mr. Aiello are generalized and unsupported by facts. While the Government initially portrayed Mr. Aiello as having engaged in criminal activity, it has since become apparent that he is not substantively implicated in the conduct charged in this matter. Mr. Aiello seeks nothing more than the opportunity to continue to defend this case while at liberty under conditions that are fair, reasonable, and no more restrictive than necessary.

Albeit the Government broadly alleges an organizational affiliation, such an assertion— unsupported by factual allegations—cannot justify the continued imposition of extraordinary and

highly restrictive release conditions. There is no allegation that Mr. Aiello poses a danger to the community, no allegation of obstruction, and no suggestion that he presents a risk of flight. His strong family ties, longstanding legitimate businesses, and flawless pretrial compliance all weigh heavily in favor of less restrictive conditions.

Accordingly, Mr. Aiello respectfully requests that the Court modify his bond conditions to remove GPS monitoring and amend the curfew to permit him to move freely within New York and New Jersey as required by his business and family obligations, while maintaining any conditions the Court deems appropriate to ensure continued compliance and appearance.

We thank the Court for its time and consideration of this request.

Respectfully submitted,

*/s/ Jeremy M. Iandolo /s/*

Jeremy Eye, Esq.
Attorney for Defendant Ernest Aiello